UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE A.
o.b.o L.S.,

                              Plaintiff,

v.                                                  CASE NO 1:22-cv-00343
                                                    (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:


HILLER COMERFORD INJURY &                           IDA M. COMERFORD, ESQ.
DISABILITY LAW                                      KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff                             KELLY LAGA-SCIANDRA, ESQ.
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                         SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

The matter is presently before the court on the parties' cross-motions for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of

the administrative record and consideration of the parties' filings, the plaintiff's motion for

judgment on the administrative record is DENIED, the defendant's motion for judgment on the administrative record is GRANTED, and the decision of the Commissioner is AFFIRMED.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

L.S. was born on September 2, 2011, and was a school-age child at the time of her hearing. (Tr. 17, 204). Generally, plaintiff alleges L.S.'s disability consists of attention deficit hyperactivity disorder (ADHD). (Tr. 207).

### B.   Procedural History

On February 11, 2020, plaintiff protectively filed an application for Supplemental Security Income (SSI) on behalf of her child, L.S., under Title XVI of the Social Security Act. (Tr. 193). Plaintiff's application was denied initially and upon reconsideration. A timely request was then made for a hearing before an Administrative Law Judge (ALJ). On July 7, 2021, plaintiff and L.S., represented by counsel, participated in a telephonic hearing before ALJ Dennis Katz. (Tr. 32-60). On July 29, 2021, ALJ Katz issued a written decision finding L.S. not disabled under the Social Security Act. (Tr. 13-26). On March 9, 2022, the Appeals Council (AC) denied plaintiff's request for review. (Tr. 2-4). The ALJ's decision became the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g), incorporated for SSI by 42 U.S.C. § 1383(c)(3) and this action followed.

### C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on September 2, 2011. Therefore, she was a school-age child on February 11, 2020, the date application was filed, and is currently a school-age child

2

(20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since February 11, 2020, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), behavioral issues and asthma (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
The undersigned finds that the claimant has:
  • no limitation in acquiring and using information;
  • less than a marked limitation in attending and completing tasks;
  • less than a marked limitation in interacting and relating with others;
  • no limitation in moving about and manipulating objects;
  • less than a marked limitation in the ability to care for himself/herself; and
  • no limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since February 11, 2020, the date the application was filed (20 CFR 416.924(a)).
(Tr. 13-25).

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Plaintiff makes primarily two arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in his consideration of a teacher questionnaire. Next, plaintiff contends the ALJ failed to properly evaluate evidence of plaintiff's functioning in the domains attending to and completing tasks and caring for yourself. (Dkt. No. 7 [Pl.'s Mem. of Law].)

### B.    Defendant's Arguments

In response, defendant addresses each argument. Defendant argues that the ALJ properly considered the statements from the teachers of L.S. Next, defendant asserts that

substantial evidence supports the ALJ's findings that L.S. had less than marked limitation in the domains of attending and completing tasks and of caring for oneself. (Dkt. No. 8 [Def.'s Mem. of Law].)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight

abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[1]

---

[1] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

IV.     ANALYSIS

A. Teacher Questionnaires

Initially plaintiff argues it was error for the ALJ to find a later teacher questionnaire persuasive and a more recent teacher questionnaire not persuasive. However, the argument is essentially that the recent teacher's assessments of "serious" or "very serious" problems in the questionnaire necessarily equate to "marked" or "extreme" limitations in the domains, based on the definitions of those limitations in the regulations. (Dkt. 7 at 15-17). At issue are the April 2019 questionnaire from 2nd grade teacher Ms. Rogers and the May 2021 questionnaire by 4th grade teachers Ms. Hlavaty and Ms. Reeb. (Tr. 24). Plaintiff's inference is misplaced and without legal authority.

Plaintiff's disability theory singles out one teacher's questionnaire, but teachers are not medical sources and thus do not issue medical opinions as the ALJ noted. (Tr. 20). *See* 20 C.F.R. §§ 416.902(j)(2), 416.920c(d). In this case, none of the medical opinions, as defined by the regulations, support marked limitations in any domain. (Tr. 23-25; see Tr. 65-66, 84-87, 367, 371, 376-77). For example, L.S.'s pediatrician, as well as consultative examiner Dr. Ransom, noted that some of what plaintiff reported as problematic behaviors were just age-appropriate manifestations needing redirection. (*See* Tr. 345, 376). Additionally, the school social worker reported to the clinic that L.S. was "a good kid" without any atypical issues. (Tr. 413). Interestingly, the teacher upon whom plaintiff relies, indicated that apart from what she learned from plaintiff's comments, she was unaware that L.S. had a chronic medical condition.

Regardless of how persuasive the ALJ found the various teacher questionnaires, a teacher opinion that a claimant has some limitations within a domain is not necessarily

inconsistent with an ALJ's conclusion that those limitations were "less than marked." *Smith v. Colvin*, No. 13-CV-6143P, 2015 WL 1119983, at *16 (W.D.N.Y. Mar. 12, 2015) (collecting cases); *see Sally M. o/b/o C.B. v. Comm'r of Soc. Sec.*, No. 20-CV-6210, 2021 WL 1783007, at *3 (W.D.N.Y. May 5, 2021) (assessments of "serious" and "very serious" problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were "less than marked"); *see Melissa C. o/b/o M.C. v. Kijakazi*, No. 20-CV-0885L, 2022 WL 167534, at *3 n2 (W.D.N.Y. Jan. 18, 2022) (although the teacher questionnaires noting "serious" and "very serious" problems could be read to support a marked or extreme limitation, they do not, by themselves, compel such a finding); *see Spruill ex rel. J.T. v. Astrue*, No. 6:12-CV-6060, 2013 WL 885739, at *8 (W.D.N.Y. Mar. 8, 2013) (Plaintiff infers that a finding of a "serious" problem in a particular skill area in a domain of functioning should be equated with a "marked" limitation. However, Plaintiff has not cited, and the Court has not found, any cases or other legal authority directly supporting this proposition.").

### B. Domains of Attending and Completing Tasks & Caring For Oneself

In a related argument, plaintiff also asserts remand is necessary because the ALJ erred in his assessment of the domains of attending and completing tasks and caring for oneself. (Dkt. 7). Plaintiff generally contends that the ALJ should have found that L.S. had marked limitations in each of these domains and that his conclusion of less than marked limitations for both was not supported by substantial evidence.

To be sure, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL

7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record ... the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id.* (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.*

For the domain of attending and completing tasks, the ALJ must assess the claimant's ability to focus and maintain attention and begin, carry through, and finish activities, including not only consideration of the pace that the activities are performed, but also the claimant's ease of switching between activities. 20 C.F.R. § 416.926a(h). Attention involves regulating levels of alertness and initiating and maintaining concentration, as well as the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. 20 C.F.R. § 416.926a(h)(1). School-age children such as plaintiff should be able to focus their attention on a variety of situations in order to follow directions, remember and organize school materials, and complete homework and classroom assignments. 20 C.F.R. § 416.926a(h)(iv). They should also be able to change activities or routines without distracting themselves or

others, stay on task and in place when appropriate, sustain attention well enough to play group sports, read by themselves, complete chores, and complete transition work like getting ready to change tasks. *Id.*

The ALJ concluded that L.S. had a less than marked limitation in this domain. In making that determination, the evidence he relied on in part was plaintiff's medication management of ADHD symptoms. Contrary to plaintiff's portrayal of Adderall dosage increases as somehow indicative of uncontrollable and markedly limiting ADHD, titrating medication with gradual increases is routine. (*See* Tr. 364 (Dr. Santarpia noting that LS's Adderall prescription was undergoing titration)). Evidence of record also reveals that plaintiff, on her own, discontinued giving L.S. Adderall, and subsequent pediatric visits in October and November 2019 were for L.S. to restart the medication. (Tr. 615, 619). By December 2019, not only had plaintiff reported improvement, but school responses for an ADHD assessment showed all negative scores. (Tr. 608). Nearly six months later, in April 2020, the pediatric clinic increased the dosage after plaintiff reported that L.S. was having difficulties completing schoolwork while learning from home. (Tr. 604). Thereafter, there were no further notable developments regarding Adderall for almost a year, until March 2021, when a pediatrician added another form of Adderall to take at noon in response to reports that the prescription wore off around that time and L.S. was struggling with online classes. (Tr. 623-24). However, L.S. was still in regular education, generally achieved average results, was progressing normally in school, received no services or other notable school interventions for ADHD or otherwise, and all medical professionals indicated that L.S.'s functioning in this domain was appropriate. (Tr. 65-66, 84-87, 222, 233, 261, 272, 311, 321, 365-67, 371, 376-77, 411). This record is replete with numerous

references showing improvement on Adderall which ALJ Katz noted along with evidence that L.S. had normal mental status examination findings, average testing results, and adequate school progress in regular education.

Similarly, the ALJ appropriately considered the record as a whole in finding less than marked limitation in L.S.'s ability care for herself. The caring for yourself domain evaluates "how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; ... cope[s] with stress and changes in [their] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). School-age children should be independent in most self-care activities such as bathing and dressing and should be able to recognize which activities they can perform and those with which they may need assistance. 20 C.F.R. 416.926a(k)(2)(iv). They should also be able to identify circumstances which make them feel good and those which make them feel bad. (*Id*.). School-age children should begin to develop an understanding of right and wrong, as well as acceptable and unacceptable behavior. (*Id*.).

Plaintiff utilizes the last paragraph of her brief to cite evidence which she contends supports at least marked limitation in the domain of caring for oneself. (Dkt. No. 7 at 17). However, as defendant points out, the reports of aggressive behavior were uncorroborated and disproportionate to the observations of medical and educational personnel. (Tr. 18-19, 21; *see* Tr. 74-77, 225, 239-40, 266, 313-14, 316, 365-66, 370-71, 376, 393-94, 413-14, 417, 585). The opinions of all the medical professionals indicate that

L.S.'s behavioral functioning was adequate, and certainly not reflective of marked deviations. (Tr. 65-66, 84-87, 367, 371, 376-77).

Plaintiff's arguments are based largely on her disagreement with how the ALJ weighed the evidence. In other words, plaintiff's contention is that the ALJ failed to sufficiently credit certain items of evidence in the record which she contends support a finding of marked limitations. At best, alternative evidentiary characterizations cannot displace the ALJ's view when it is reasonable and supported by substantial evidence. *See McIntyre v. Colvin,* 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Court has reviewed the ALJ's decision, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence. While the record supports that L.S. has some limitations in functioning, the ALJ adequately explained how he arrived at his determination that L.S. has less than marked limitations in the domains of attending and completing tasks and caring for herself. Remand is not warranted.


**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**.


Dated: June 28, 2024                    J. Gregory Wehrman
Rochester, New York                     HON. J. Gregory Wehrman
                                        United States Magistrate Judge

12